128 N.J. Super. 270 (1974)
319 A.2d 771
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JESSE HARPER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 3, 1973.
Decided May 15, 1974.
*271 Before Judges HANDLER, MEANOR and KOLE.
Mr. James K. Smith, Jr., Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
*272 Mr. L. Steven Pessin, Deputy Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
The opinion of the court was delivered by HANDLER, J.A.D.
Defendant was indicted for armed robbery and murder. He was found guilty by a jury of felony murder and sentenced to life imprisonment. Because the trial court charged the jury only on felony murder and did not permit it to consider second degree murder or manslaughter, defendant now claims this constituted plain error requiring a reversal.
The murder of Robert Bradley was unwitnessed. The evidence that the murder was perpetrated in the course of a felony was wholly circumstantial.
Patrolman Robert G. Boyle of the Jersey City Police was the first police officer to arrive on the scene of the murder. On January 30, 1972, at 2:28 A.M., he responded to a call to go to the corner of Fairview and Bergen Streets. Boyle and his partner found Bradley lying face down on the sidewalk still alive and breathing heavily. The body was pointed out to Boyle by the only person present, Fred Hess, who had called the police. On close examination it was noticed that the victim was bleeding from the back of the head and it was suspected that he had been shot. Lying in the vicinity of the body was a register for a check book, a button from the victim's jacket, the back of a watch, a key ring, a plastic bottle of glyoxide and some miscellaneous papers. The victim also had 45¢ in change in his pocket. Boyle also testified that the victim's car was found parked approximately two blocks away.
Bradley's brother and mother testified that Bradley carried a black leather wallet and always wore a wrist watch and that he owned a 1968 blue Cadillac. A jacket which he had been wearing was identified and they recognized some shirts which he had been carrying at the time of his death. Another witness testified that he had seen Bradley earlier, *273 at approximately noontime on January 29, 1972, and he had observed the wallet. He also identified the jacket. The bartender at Ilvento's Bar and Restaurant testified that Bradley came into the premises at 2 P.M. (of January 29) and that he was carrying several shirts on a hanger. He consumed several cokes and when the witness finished work at 9 P.M. Bradley drove him home. The manager of the bar stated that Bradley returned about a half-hour later and stayed until closing at 2 A.M.
The evidence, which pointed to defendant as the murderer, was also circumstantial but nevertheless convincing. An autopsy was performed on decedent and it was established that the cause of death was a gunshot wound of the brain and skull with a right subdural hematoma. The doctor testified that he thought the man was shot from an angle which was lower than the position of his head.
Oliver Booker testified that he was an acquaintance of defendant and that sometime around January 23, 1972 he met defendant who asked where he could obtain some .32 bullets. After first denying that he had any, Booker took defendant to his apartment and gave him five bullets from a box which he had purchased in Alabama some two years earlier. Booker said that he turned over to the police the box containing the remaining .32 bullets. He was shown four bullets which had been recovered from the gun found on the defendant when he was arrested and stated that they were similar to the bullets he gave to defendant and turned over to the prosecutor's office.
Detective Anthony Villaneuva testified that he was working the four to midnight shift on February 2, 1972. On his way to work he saw defendant exiting from Chet's Bar. He stopped his car, approached defendant and called for him to stop. He then patted him down, finding a .32 revolver tucked into his waistband. Detective George Russell testified that he was working on the four to twelve tour on February 2 when defendant was brought in. He gave the Miranda warnings and defendant chose not to speak. Later he changed his mind and *274 admitted the gun was his and that he had purchased it from a person, whose name he didn't know, on January 23, 1972.
State Police Sgt. John Linott testified that he test-fired the gun taken from defendant with one of the bullets obtained from Booker, which was compared with the one taken from the victim. Linott stated that it was his belief that the bullet removed from Bradley's brain had been fired from defendant's gun to "the exclusion of all others."
After the denial of a motion for dismissal, defendant produced three alibi witnesses who stated they had been with defendant at an anniversary party for his parents on the evening of the crime but they saw him last at 12:30 A.M. heading for his house.
The motion made by defense counsel for a dismissal at the conclusion of the State's case was on the ground that the evidence failed to conform to the indictment in that there was no proof of the underlying felony which could be tied to the defendant. The court denied the motion. Both counsel then agreed with the judge that there could be but two verdicts  not guilty or felony murder. It is now urged that this resulted in plain error.
The issue posed is akin to that considered in State v. Mathis, 47 N.J. 455 (1966), where the court stated:
Both the State and the defense tried the case on an all-or-nothing basis. Both agreed that but two verdicts were possible: (1) acquittal or (2) first-degree murder, with or without a recommendation for life imprisonment. Now defendant claims it was plain error to have kept from the jury the issue of second-degree murder.
An unlawful homicide is murder in the second degree. It is incumbent upon the State to prove the additional element the statute, N.J.S. 2A:113-2, N.J.S.A. requires to elevate the offense to first degree, and on the thesis on which this case was tried, that additional element was an attempt to rob.
Here there was no evidence affirmatively suggesting the killing was other than in the course of an attempt to rob. Still the question remains whether the State's proof as to an attempt to rob was so unequivocal as to make it idle to ask the jury to pass upon it. After the testimony concerning the missing articles was struck, there remained the fact that a trouser pocket was turned inside out, but the defense contended that this circumstance, without more, did not *275 show the pocket was turned by the assailant. Thus the defense denied that that fact necessarily suggested a robbery.
A defendant who denies complicity does not thereby concede the criminal event was everything the State claims it was. It remains the burden of the State to satisfy the jury beyond a reasonable doubt that the murder was of the character the statute denounces as murder in the first degree. If under the proof there is in fact no room for dispute as to whether the killing occurred in the perpetration or attempt to perpetrate the felony, our cases say the issue should not be left to the jury. State v. Zeller, 77 N.J.L. 619 (E. & A. 1909); State v. Giampietro, 107 N.J.L. 120, 122 (E. & A. 1930); State v. Pacheco, 38 N.J. 120, 131 (1962). The cases elsewhere hold that if, on the trial of a first-degree charge, it "appears clearly" from the evidence that the homicide was of no lower degree, the trial court "may", and some cases say "should", instruct the jury to find the defendant guilty of murder in the first degree or not guilty. 41 C.J.S. Homicide, § 392, p. 209. To leave the issue of second-degree murder with the jury in such circumstances could conceivably lead to a compromise verdict. On the other hand, if the issue of second-degree murder is improperly taken from the jury, the jury might convict of first-degree or acquit a man whose guilt is of a lesser degree.
We said in State v. Sullivan, 43 N.J. 209, 245 (1964), that "Even in cases where the thesis of the State's prosecution is felony-murder, if a factual issue arises as to whether the killing was a felony or nonfelony murder, the jury must be instructed that a finding of nonfelony killing must be accompanied by a designation of first or second degree murder." A factual issue of that kind was involved in State v. Wynn, 21 N.J. 264 (1956), and it was held to be error not to leave second-degree murder with the jury.
Under the proof in this case the fact of a robbery or attempt to rob was not indisputable, and indeed defendant affirmatively challenged that aspect of the State's thesis. Under such circumstances the issue of second-degree murder should have gone to the jury. Having deliberately taken the all-or-nothing stance we have described, defendant is in poor position to complain. Whether we should nonetheless find there was "plain error", we need not decide since for other reasons there must be a new trial. We however have stated our view for guidance upon the retrial. [at 466-468]
The evidence in this case indicative of an attempted robbery in conjunction with the murder was not "so unequivocal as to make it idle to ask the jury to pass upon it"; nor can it be said that "under the proof there is in fact no room for dispute as to whether the killing occurred in the perpetration or attempt to perpetrate the felony." Ibid. Clearly, in the context of such evidence, if there had been a specific request *276 to charge second degree murder or an objection on the court's failure to so charge, the error would be reversible. State v. Wynn, 21 N.J. 264 (1956); State v. Sullivan, 43 N.J. 209 (1964); Compare, State v. Davis, 50 N.J. 16, 27-28 (1967). In State v. Sinclair, 49 N.J. 525 (1967), the court said:
We think that all these factors make it not idle to have the jury decide whether or not one or both defendants were guilty of murder even though no attempted robbery occurred. The defense need not offer affirmative proof, as urged by the State, that no attempted robbery occurred to be entitled to a charge on second degree murder; it is enough that the evidence leaves room for dispute as to whether the killings occurred during the course of an attempted robbery. Mathis, supra, 47 N.J., at pp. 466-467. In the present case where the contention was vigorously advanced by defendants and written instructions were submitted, it was reversible error not to charge the jury that on such findings a verdict of second degree murder could be returned. [at 542]
The question left unanswered in Mathis  whether a defendant having deliberately taken an all-or-nothing stance under circumstances where the issue of second degree murder should have gone to the jury can urge this as plain error on appeal  is squarely presented.
Plain error, which requires the reversal of a conviction, must be "of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2. State v. Lair, 62 N.J. 388, 392 (1973); State v. LaPorte, 62 N.J. 312, 318-19 (1973); State v. Macon, 57 N.J. 325, 337 (1971); State v. Hock, 54 N.J. 526, 538 (1969), cert. den. 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970). Not every trial error characterized as plain error, however, is required to be entertained on appeal. This was apparently recognized in State v. Macon, supra, 57 N.J. at 337, where the court, in explicating the doctrine of plain error, stated that "[t]his does not mean that the reviewing court may not, as theretofore, decline to accept an issue first raised on appeal, or that the reviewing court may not find the failure to object was a recognition by counsel that the alleged error *277 in fact was of no moment or was a tactical decision to let the error go uncorrected at the trial."
Trial errors which were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal. State v. Pontery, 19 N.J. 457 (1955); State v. Roscus, 16 N.J. 415 (1954); State v. Auld, 2 N.J. 426 (1949), aff'd on petition for habeas corpus 187 F. 2d 615 (3 Cir.1951). "The defendant cannot beseech and request the trial court to take a course of action, and upon adoption by the court, take his chance on the outcome of the trial, and if unfavorable, then condemn the very procedure he sought and urged, claiming it to be error and prejudicial." State v. Pontery, supra 19 N.J. at 471; State v. Riley, 111 N.J. Super. 551, 553 (App. Div. 1970), certif. den. 57 N.J. 432 (1971); State v. Sykes, 93 N.J. Super. 90, 95 (App. Div. 1966); State v. Kaiser, 74 N.J. Super. 257, 273 (App. Div.), certif. den. 38 N.J. 310 (1962), aff'd 80 N.J. Super. 176 (App. Div. 1963), cert. den. 376 U.S. 950, 84 S.Ct. 966, 11 L.Ed.2d 970, reh. den. 377 U.S. 913, 84 S.Ct. 1163, 12 L.Ed.2d 184 (1964). Cf. Venuto v. Lubik Oldsmobile, Inc., 70 N.J. Super. 221, 229 (App. Div. 1961); Schult v. H. & C. Realty Corp., 53 N.J. Super. 128, 136 (App. Div. 1958), certif. den. 29 N.J. 279 (1959).
It does not follow that merely because an error was occasioned by the intentional or purposeful acts of defense counsel, a reversal on such grounds is automatically foreclosed. In those cases in which such induced or invited error was not permitted to be pressed on appeal, it appears that the particular error did not cut mortally into the substantive rights of the defendant. Thus, where the invited error did not demonstrably impair a defendant's ability to maintain a defense on the merits (e.g., State v. Pontery, supra 19 N.J. at 471) or where the after-criticized judicial action was reasonably thought to secure a trial or tactical advantage for the defendant (e.g., State v. Riley, supra; State v. Sykes, supra; State v. Kaiser, supra), it has not been considered so egregious as to mandate a reversal on appeal.
*278 We must recognize, however, that, although brought about by defendant, there are errors of such magnitude that they trench directly upon the proper discharge of the judicial function. Some errors "may go so plainly to the integrity of the proceedings that * * * a new trial is the just course * * *." State v. Macon, supra 57 N.J. at 338. We conceive that errors of this dimension may be cognizable on appeal as plain error notwithstanding their having been precipitated by a defendant at the trial level.
The inquiry in this situation calls for a close, balancing examination of the nature of the error, its impact on the trial and the jury's verdict, and the quality of defendant's motives and conduct in bringing about the error. In the context of this case the error was not of such patent gravity as to require a new trial. The evidence buttresses the basic soundness of the jury's verdict of felony murder. As noted, the victim was still alive when found; his watch and wallet were missing; his other possessions were scattered about, and the fatal attack had come from behind. These factors, among others, show graphically not only that the victim had just been shot but that a robbery occurred at the same time; and since other evidence converged pointedly on defendant as the murderer, the inference is strong that he also committed or attempted to commit a robbery when he killed his victim.
Even if the issue of second degree murder had been submitted to the jury, it is very unlikely  though not impossible  that the jury would have found that a felony had not occurred in conjunction with the murder and that the felony murder had not been committed by defendant. Additionally, the evidence pointing to a robbery-connected murder, although circumstantial, was not so weak or attenuated as to suggest that the jury's verdict of felony murder was an improper compromise reflecting essentially a feeling that defendant had committed the homicide but had not robbed his victim. If the converse were true  if the evidence were such that it was very probable that the jury, given the choice, would *279 have concluded that the homicide was unexplained or unconnected to any robbery, and was, therefore, a second degree murder or manslaughter  then greater weight might attach to the argument that reversible error was committed in not submitting a second degree murder or manslaughter alternative to the jury.
The mistake of the trial court, as serious as it was, did not so stain the judicial process as to call for a new trial. It cannot be overemphasized that the court should not have acceded to the position espoused by defendant at the trial that the case be submitted to the jury without the second degree murder alternative. Under such circumstances a trial court should not withhold this choice from the jury regardless of the wishes of counsel. The court's mistaken acceptance of this position, however, was understandable. The court was not confronted with a situation where there was no evidence at all or only a scintilla of evidence of a robbery, but rather, as we stated earlier, there was evidence, albeit circumstantial, which was sufficient for a jury to find beyond a reasonable doubt that a felony had taken place. Moreover, the prosecutor as well as defense counsel agreed to have the case presented on an all-or-nothing basis.
For these reasons we conclude that defendant has not demonstrated plain error which requires a reversal.
Defendant also argues that the prosecutor's summation resulted in plain error because he stated that "all the parties to the case knew defendant was guilty." In the context of the summation the comment was not calculated to convey the belief of defendant's guilt based upon knowledge or facts not before the jury. Rather, it was intended to express the thought that a belief in defendant's guilt would be shared by any person familiar with the evidence in the case. Thus, the reliance by defendant on Berger v. United States, 295 U.S. 78, 84-89, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); State v. Farrell, 61 N.J. 99 (1972); State v. Thornton, 38 N.J. 380, 396-400 (1962), cert. den. 374 U.S. 816, 83 S.Ct. 1710, *280 10 L.Ed.2d 1039 (1963); State v. Hipplewith, 33 N.J. 300, 310-12 (1960), and Aponte v. State, 30 N.J. 441, 447-449 (1959), in this regard is ill-founded. We are of the view that the comment did not lead to plain error.
We have also considered the additional points presented in a pro se letter brief. It is argued that defendant was deprived of his constitutional right to have effective counsel and that certain evidence was improperly introduced to demonstrate that because of the victim's status defendant could be regarded a "cop killer". We conclude that these contentions are wholly lacking in merit.
Affirmed.