STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. LARRY POWELL, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 27, 1979—Decided April 10, 1979.

Before Judges MATTHEWS, KOLE and MILMED.

*Edward Kopelson,* Assistant Deputy Public Defender, argued the cause for appellant (*Stanley C. Van Ness,* Public Defender, attorney).

*Kenneth N. Lipstein,* Deputy Attorney General, argued the cause for respondent (*John J. Degnan,* Attorney General of New Jersey, attorney).

PER CURIAM.

Defendant, a police officer, was convicted by a jury of second degree murder of the woman with whom he lived. The murder occurred in their apartment. He was also convicted of the murder while armed with a gun. He appeals.

Defendant contends that it was reversible error for the trial judge to have denied his request to charge manslaughter, notwithstanding his disavowal on the stand of the statement which he made to police and introduced by the State, which "would support a manslaughter conviction." We disagree.

At trial defendant's counsel suggested that the jury, if it believed that statement, could reasonably infer therefrom that defendant committed what appears to be voluntary manslaughter. He stated that

. . . there was an argument [with the deceased] wherein there was a grabbing for the gun, there may have been that feeling by him that she was going to shoot in a fit of rage. Justifiably provoked and attempted to kill him. He may have reacted in anger and without the benefit of . . . time to cool off and committed the act. . . . It's something for them [the jury] to consider that [the deceased] tried to grab his gun and kill him, and he in a fit of rage took the gun away from her and killed her . . . [and it is a jury question as to whether her trying to kill him constituted] . . . justifiable provocation.

The crime thus described is voluntary manslaughter—an intentional homicide done in sudden heat of passion resulting from a reasonable provocation, a passion which effectively deprived the killer of the mastery of his understanding and was acted upon before a time to permit reason to resume its sway had passed. *State v. Bonano*, 59 *N.J.* 515, 523 (1971).

Apart from the foregoing suggestion, we find in the record no other defense request for a manslaughter instruction or an objection by defendant to the judge's failure to charge any form of manslaughter.

Involuntary manslaughter generally is an unintentional homicide, committed without excuse or justification, under circumstances not manifesting or implying malice, such as causing death as a result of the reckless handling of a loaded firearm. *State v. Bonano, supra.* It also includes a killing accompanied

by an intent to inflict less than serious bodily injury. *State v. Madden*, 61 *N.J.* 377, 385 (1972); *State v. Robinson*, 139 *N.J.Super.* 475, 488 (App.Div.1976).

From our review of the disavowed statement, we are satisfied that it would not support the kind of voluntary manslaughter suggested by defense counsel at the trial–*i. e.*, an intentional killing committed in a sudden transport of passion induced by provocation; and that it would also not support an involuntary manslaughter charge predicated on an intent by defendant to inflict less than serious injury.

Conceivably, if at all, it might support a charge of involuntary manslaughter involving an unintentional killing by the reckless handling of a firearm, a matter not suggested below by defendant as an issue to be presented to the jury.

In the disavowed statement defendant asserts the following: There was an argument between him and the deceased in the apartment. She "went for" his gun, which was on his person, and she "got it." Defendant grabbed it, was pulling it toward himself and then "turned it away" from himself, at which time it went off. The deceased then fell on a chair. During the course of the quarrel she came at him, he pushed her away, she came back at him and his shirt "went up." She then grabbed for the gun that was in his belt and she "had it and that's when there were shots from the gun." When she had removed the gun from his belt during their struggle, he "thought" it was pointed in his direction and "figured I was gone so when I first heard the shots, I was surprised  .  .  .  like I was supposed to be hit but it was her" when the first shot was fired. He removed the weapon from her. "It was like in both of our hands" while they were struggling for the weapon. When the gun went off, both of them had possession of it; he was trying to "wrestle" it from her. He also stated that the gun went off "while it was in her possession." The weapon discharged more than once. She was standing "by the chair" when this happened. He later disposed of the gun on the highway after leaving the apartment to go to Atlantic City. He was asked whether he cared to add anything to the statement. He answered, "the only thing is that it was an accident."

■ Essentially, then, the statement indicates a quarrel between defendant and the deceased, a subsequent struggle between them for possession of the gun in his waist when she tried to seize it from him and an unexplained or unexpected shooting of deceased with the gun while she was standing near a chair.

Even if we were to discount defendant's assertion in the statement that it was an "accident" as simply a layman's conclusion from the facts, the contents of the statement cannot support a charge of voluntary manslaughter. *See State v. Sands*, 138 *N.J.Super.* 103, 109 (App.Div.1975), aff'd 76 *N.J.* 127 (1978).

It is clear from the facts contained in the statement that the killing did not occur with an intent to do less than bodily harm. Moreover, there is also no real room for dispute from such facts that the killing was not the result of the reckless handling of a loaded firearm. The possibility that the state might support an involuntary manslaughter charge on the latter thesis is so remote and tenuous that plainly no jury question was presented with respect thereto. In short, it would have been "idle to ask the jury to pass upon" the issue of involuntary manslaughter. *State v. Harper*, 128 *N.J.Super.* 270, 274–276 (App.Div.), certif. den. 65 *N.J.* 574 (1974). At best, the statement would support a charge of misadventure or self–defense, both of which were contained in the judge's instructions to the jury.

■ In any event, even if there were error in the trial judge's failing to instruct the jury on voluntary and involuntary manslaughter, the objective proofs at the trial, including the evidence provided by the ballistics expert and medical examiner as to the manner in which the killing occurred and defendant's contradictory accounts of the killing, were clearly sufficient to support the jury's verdict; and there is a total lack of prejudice to defendant in the judge's failure to charge manslaughter. The evidence was such that we are convinced that there was no real possibility of an unjust result in this case by reason of the

absence of a manslaughter charge. *State v. Macon*, 57 *N.J.* 325, 336 (1971); *State v. Harper, supra*, 128 *N.J.Super.* at 278–279.[1]

■ Although the jury convicted defendant of murder and murder while armed, the trial judge, during the sentencing, dismissed the armed feature charge. He imposed a sentence of 28 to 30 years for second degree murder. Defendant claims this sentence is manifestly excessive since, among other things, he is a first offender and a police officer and the homicide arose from a domestic quarrel.

We have reviewed the record, including the nature of the offense, the presentence report, the sentence proceedings and the reasons given by the trial judge for the sentence. We have concluded that the sentence was neither unduly punitive nor an abuse of discretion.

Affirmed.

---

[1]Indeed, we are satisfied that, faced with the evidence adduced at trial, the jury would not have found the version of the killing contained in the disavowed statement to be believable.