187 N.J. Super. 187 (1982)
453 A.2d 1365
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RICKEY BISHOP, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 19, 1982.
Decided November 17, 1982.
*189 Before Judges MICHELS, PRESSLER and TRAUTWEIN.
Joseph H. Rodriguez, Public Defender, attorney for appellant (Stanley C. Van Ness, former Public Defender, and Steven Jay Greenstein of counsel and on the brief).
Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondent; John Covino, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
*190 Defendant Rickey Bishop was indicted by the Passaic County grand jury and charged with the first degree robbery of Jerome Kostus, in violation of the provisions of N.J.S.A. 2C:15-1. Defendant's first trial ended when the jury disagreed upon a verdict and a mistrial was declared. Following a second trial, defendant was convicted by the jury of first degree robbery and was sentenced to the Youth Correctional Institution Complex for an indeterminate term with a 15-year maximum, and assessed a penalty of $25. Defendant appeals.
According to the State's proofs, at about 4 a.m. on June 18, 1980, Kostus was robbed and assaulted by defendant and another man in the entrance of an abandoned building on Broadway, Paterson, New Jersey. On June 17, 1980 Kostus, after finishing work in the afternoon, had taken his girlfriend out for a birthday dinner. After dinner he took her home and then went back to his place of employment in South Hackensack. There he met three employees, including his supervisor Jacobi. Kostus, Jacobi and the two coemployees went in three cars to bars in South Hackensack, Garfield and Passaic. Following the closing of the Passaic bar at 3 a.m. on June 18, Kostus drove Jacobi to Paterson. Kostus parked his car on Broadway, got out of the car and struck up a conversation with defendant and another man. During this time Kostus and the two other men were observed by Paterson Police Officer Wells who was en route to an assignment. Wells thought that he had recognized one of the two men with whom Kostus was speaking.
After a few moments defendant came up behind Kostus, grabbed him by the throat and dragged him into the entrance of the abandoned building. The other man stepped in front of Kostus and said, "I have a knife. Where's your money?" Kostus reached into his front pocket to hand the money over. The man who had threatened Kostus pulled the latter's hand away and took the money himself. He also took Kostus's wallet from his back pocket. Defendant then told his confederate to check *191 Kostus's shoes and socks for more money, and the confederate removed both from Kostus's feet. Defendant and his confederate threw Kostus onto the ground, tore his vest, kicked him repeatedly in the head, and warned him not to get up. Defendant and his confederate fled. Kostus then got up, picked up his shoes and walked out to the street. At about 4 a.m. Wells and his partner returned to Broadway and saw Kostus walking out of the abandoned building. Kostus told them that he had been robbed and assaulted and gave them a description of defendant as one of his assailants. Later in the day Officer Wells identified defendant from photographs. Kostus later also made a positive identification of defendant. This appeal followed.

I
Defendant contends that the trial judge erred in permitting Kostus to invoke his Fifth Amendment privilege against self-incrimination in the second trial because he had waived that right by testifying regarding the same privileged matter in the first trial. The judge permitted Kostus to invoke the privilege when defense counsel questioned Kostus concerning his possible procurement of a prostitute on Broadway shortly before he was robbed. Defendant argued that Kostus had admitted an "affiliation" with a prostitute in the first trial and therefore waived his privilege to refuse to answer questions concerning this matter at the second trial.
The rule concerning waiver of a privilege is set forth in Evid.R. 37 (N.J.S.A. 2A:84A-29), which provides:
A person waives his right or privilege to refuse to disclose or to prevent another from disclosing a specified matter if he or any other person while the holder thereof has (a) contracted with anyone not to claim the right or privilege or, (b) without coercion and with knowledge of his right or privilege, made disclosure of any part of the privileged matter or consented to such a disclosure made by anyone.
A disclosure which is itself privileged or otherwise protected by the common law, statutes or rules of court of this State, or by lawful contract, shall not constitute a waiver under this section. The failure of a witness to claim a right or privilege with respect to 1 question shall not operate as a waiver with respect to any other question.
*192 It is perfectly clear that once privileged material is disclosed, the privilege of nondisclosure is waived. See In re Bridge, 120 N.J. Super. 460, 466 (App.Div. 1972), certif. den. 62 N.J. 80 (1972), cert. den. 410 U.S. 991, 93 S.Ct. 1500, 36 L.Ed.2d 189 (1973). Cf. In re Murtha, 115 N.J. Super. 380, 387-388 (App.Div. 1971), certif. den. 59 N.J. 239 (1971). It is equally clear that the waiver is irrevocable once a witness answers a question without claiming the privilege, State v. Fary, 19 N.J. 431, 435 (1955); State v. Toscano, 13 N.J. 418, 423 (1953), and continues in effect for all subsequent proceedings. See 1967 Legislative Commission Note to Evid.R. 37, in New Jersey Rules of Evidence (Anno. 1980), at 226. Cf. State v. DeCola, 33 N.J. 335, 345-348 (1960); State v. Fary, supra, 19 N.J. at 440.
Here, Kostus waived his Fifth Amendment privilege by testifying at the first trial concerning his being with a prostitute. Kostus admitted not only driving off with the woman and that she was a prostitute, but also that he had an "affiliation" with her. Because Kostus testified concerning his relationship with a prostitute at the first trial without claiming the privilege, he irrevocably waived the privilege to refuse to answer those questions at the second trial. Consequently, the trial judge erred in permitting Kostus to invoke the privilege.
Nevertheless, in light of the wide latitude granted to defendant to cross-examine Kostus concerning his being with the woman, we find no prejudice to defendant that would warrant a reversal. Furthermore, in view of the overwhelming evidence of defendant's guilt, this error did not reach dimensions "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971). The error, therefore, was harmless beyond a reasonable doubt.

II
Defendant also contends that the trial judge committed plain error when he charged the jury as to the effect of Kostus's *193 invocation of his Fifth Amendment privilege. The charge complained of tracks a similar charge approved by the Supreme Court in State v. Haines, 18 N.J. 550, 564-565 (1955), and reads as follows:
There were some questions asked of the witness Jerome Kostus which he did not answer. He asserted his constitutional privilege not to incriminate himself. You should not infer from the refusal of Mr. Kostus to answer these questions that his answers would have been unfavorable to the defendant.
Defendant did not object to this charge when given to the jury. However, defendant now argues that reversible error was committed by giving the charge, in light of Evid.R. 39 (N.J.S.A. 2A:84A-31), which provides:
If a privilege is exercised not to testify or to prevent another from testifying, either in the action or with respect to particular matters, or to refuse to disclose or to prevent another from disclosing any matter, the judge and counsel may not comment thereon, no presumption shall arise with respect to the exercise of the privilege, and the trier of fact may not draw any adverse inference therefrom. In those jury cases wherein the right to exercise a privilege, as herein provided, may be misunderstood and unfavorable inferences drawn by the trier of the fact, or be impaired in the particular case, the court, at the request of the party exercising the privilege, may instruct the jury in support of such privilege.
The language of this rule is clear and unambiguous. A charge to the jury to draw no adverse inferences from a party's or witness's invocation of testimonial privilege is permitted only when requested by the party asserting the privilege. No such request was made here, and therefore the complained of charge should not have been given.
However, we cannot conclude that the error was "clearly capable of producing an unjust result." R. 2:10-2; State v. Lair, 62 N.J. 388, 392 (1973); State v. Hock, 54 N.J. 526, 538 (1969), cert. den. 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970); State v. Haines, supra. As we held above, the evidence of defendant's guilt was overwhelming. Officer Wells positively identified defendant as being at the scene of the crime no more than 20 minutes before the robbery talking to Kostus. The same day Kostus positively identified defendant as his assailant.
Second, defense counsel can hardly object to the "highlighting for the jury the victim's refusal to answer certain questions" *194 when he stressed this point repeatedly in his summation and graphically drew for the jury the inferences he desired.
Third, even though the charge may have been erroneously given it was defense-induced error. Not only did defendant not object to the charge when it was made, but he acquiesced in the error before it was given, as appears from the following colloquy among the trial court, defense counsel Kelly and Prosecutor Zdobinski:
Let's see if we can agree on some language on Haines [referring to the charge]. What I would in effect tell the jury if you want me to is you should not  I mention there were some questions asked of the witness Kostus which he did not answer on grounds of his Fifth Amendment right not to incriminate himself and then say you the jury should not infer from the refusal of this witness to answer those questions that his answers would have been unfavorable to the defendant.
Mr. Kelly: Thank you, your Honor.
The Court: Do you wish to be heard in comment?
Ms. Zdobinski: No, your Honor.
The Court: All right. Then let me write that out.
All right. Would you both take a look at what I have written out and what I would use.
Mr. Kelly: Thank you, your Honor.
The Court: You have previously indicated that you had no objection in terms of the record. Am I correct in that?
Mr. Zbodinski: That's true, your Honor.
The Court: All right.
It is settled that trial errors originating with defendants ordinarily cannot serve as a vehicle for reversal on appeal. State v. Simon, 79 N.J. 191, 205 (1979). In this regard, we repeat what our Supreme Court has said in State v. Pontery, 19 N.J. 457 (1955):
The defendant cannot beseech and request the trial court to take a certain course of action, and upon adoption by the court, take his chance on the outcome of the trial, and if unfavorable, then condemn the very procedure he sought and urged, claiming it to be error and prejudicial. [at 471]
The single exception to this rule is when the errors are "of such magnitude that they trench directly upon the proper discharge of the judicial function." State v. Simon, 79 N.J. 191, 205 (1979), quoting State v. Harper, 128 N.J. Super. 270, 278 (App.Div. 1974), certif. den. 65 N.J. 574 (1974). This court has *195 held, however, that the erroneous giving of a charge on drawing inferences from a defendant's silence, when induced or acquiesced in by the defendant, does not fall within this exception. State v. McNeil, 164 N.J. Super. 27, 31-33 (App.Div. 1978), certif. den. 79 N.J. 497 (1979). Hence, the erroneous giving of the charge here on drawing inferences from the witness's silence, acquiesced in by defendant, does not require a reversal.

III
Finally, we are satisfied that the sentence to the Youth Correctional Institution Complex for an indeterminate term with a 15-year maximum imposed upon defendant following his conviction for first degree robbery was neither manifestly excessive nor unduly punitive. On the contrary, the sentence was well within the sentencing discretion of the trial court and does not constitute a miscarriage of justice. State v. Whitaker, 79 N.J. 503, 512-517 (1979).
Accordingly, the judgment of conviction and order for commitment is affirmed.