**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3383-19
              A-0573-20

TOWNSHIP OF DEPTFORD,
a municipal corporation of the
State of New Jersey,

     Plaintiff-Respondent,

v.

DEPTFORD COMMONS, LLC,
and MALACHITE GROUP,
LTD.,

     Defendants-Appellants,

and

AMAZON.COM SERVICES,
INC.,[1]

     Defendant.

_____

DEPTFORD COMMONS,
LLC, and MALACHITE
GROUP, LTD.,

_____

[1] The record at times refers to this party, which has not participated in the appeal, as "Amazon."

Plaintiffs-Appellants,

v.

TOWNSHIP OF DEPTFORD
ZONING BOARD OF
ADJUSTMENT,

Defendant-Respondent.

_____

Argued September 13, 2021 – Decided September 28, 2021

Before Judges Sabatino, Mayer, and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Gloucester County, Docket Nos. C-000019-19 and L-0410-20.

John G. DeSimone argued the cause for appellants Deptford Commons, LLC, and Malachite Group, Ltd. (DeSimone Law Offices, LLC, attorneys; John G. DeSimone, on the briefs).

Alysia J. Remaley argued the cause for respondent Township of Deptford (Grace, Marmero & Associates, attorneys; John A. Carleton, on the brief).

James W. Burns argued the cause for respondent Township of Deptford Zoning Board of Adjustment (Dembo, Brown & Burns, LLP, attorneys; James W. Burns, of counsel and on the brief).

PER CURIAM

These two appeals[2] are filed by the owner and property manager of a parcel in Deptford Township. The cases arise from the denial of a land use variance application to allow Amazon, a tenant, to use 300 spaces of the site's retail shopping parking lot to park delivery trucks and employee vehicles. For the reasons that follow, we affirm in both appeals.

I.

Appellant Deptford Commons, LLC ("DC" or the "Owner") owns real property located at 1800 Clements Bridge Road, designated as Block 1.04, Lot 8 (the "Property"), in the Township of Deptford in Gloucester County. Co-appellant Malachite Group, Ltd. ("Malachite" or the "Property Manager") is the property management company for DC. The Property consists of a retail shopping center and an accompanying uncovered parking lot with approximately 1,000 spaces.

The Property is located within the zoning district "Business Center 2" ("BC-2") as defined in the Township's Unified Development Ordinance ("UDO"). According to the UDO, the purpose of the BC-2 zone is to "provide an area for various types of non-residential development with moderate levels

---

[2] We consolidate the appeals, which were argued together, for purposes of issuing this single opinion.

of development intensity." Deptford Township UDO § 17.1 Business Center 2—BC2. The following uses are permitted in a BC-2 zone: movie theaters, performing arts facilities, sports venues; hotels, motels, and inns; car service stations; shopping centers; garden centers; department stores; and discount stores or clubs not to exceed 100,000 square feet.

Notably for the present appeals, the permitted accessory uses in BC-2 include: "a. Off-street parking lots and structures"; and "b. <u>Garages</u> to house delivery trucks and other commercial vehicles (<u>unenclosed storage</u> of trucks and trailers is <u>not</u> permitted)" (emphasis added). By comparison, only the more restrictive BC-1 zone, which applies to "more intensive development adjacent to a major highway interchange[,]" permits "[w]arehouse, storage, packing and crating, and distribution facilities, wholesale sales."

In October 2018, DC entered into a leasing agreement with Amazon.com Services, Inc. ("Amazon") conveying to Amazon the right to use the parking lot at the Property to park a number of its employee and delivery vehicles. The lease was for a two-year term commencing on November 1, 2018. The lease contained a clause providing that "Amazon may terminate [the agreement] if any governmental authority requires Amazon to vacate or abandon the Parking Area."

Neither DC, Malachite, nor Amazon sought permits or use variances from the Township before executing the lease agreement. It is undisputed that Amazon's occupation of the leased Property constituted a violation of the Township's UDO, which, as we noted above, disallows non-enclosed parking of trucks and delivery vehicles in the BC-2 zone.

Upon learning of Amazon's non-permitted use of the site for parking, the Township initially issued to DC and Malachite violation notices and orders to pay on January 18, 2019, and again on March 5, 2019, stating they were in violation of the Township's UDO. Despite that, DC and Malachite did not correct the violations. Consequently, on April 11, 2019, the Township filed a verified complaint and order to show cause in the Chancery Division under Docket No. GLO-C-19-19 (the "Chancery case"). The complaint sought in part to enjoin DC, Malachite, and Amazon from continuing the non-conforming use of the Property without obtaining the required permits and use variances.

While the Chancery case was pending, Amazon filed a zoning permit application on June 12, 2019 with the Township's Zoning Board of Adjustment (the "Board"). In the permit application, Amazon sought the Board's approval of the "use of 300 existing parking spaces . . . for parking of delivery vans and personal vehicles of drivers." The application represented that Amazon's

"drivers arrive and park personal vehicle[s]; pick up delivery van[s] and head to [a] nearby fulfillment facility and then delivery route; return at end of shift to drop off delivery van[s] in parking spot[s] and leave in personal vehicle[s]." The Board denied the requested permit on June 18, 2019.

DC and Amazon then entered into a zoning application agreement on July 2, 2019, in which DC agreed to bear the costs of bringing a use variance application before the Board. Paragraph C.4 of that agreement stated: "In the event that the Application or any required permit or approval is denied by the governmental body or agency, the decision to appeal said action shall require the consent of both the Owner [DC] and Applicant [Amazon]." (Emphasis added).

Amazon thereafter submitted a use variance application to the Board on September 26, 2019. The application included a traffic and parking evaluation prepared by Langan Engineering. Two use variances were requested. The first use variance sought approval "for an accessory delivery van and vehicle parking use not tied to a principal use on site." The second use variance sought permission to park "Amazon delivery vans and vehicles as a second principal use on site."

6

The Board heard Amazon's variance application at a public meeting held on February 4, 2020. At that Board hearing, Amazon's attorney opened the proceedings with an overview of the proposed application. Amazon then presented testimony from three witnesses: Raymond Wamm, Lead Order Delivery Manager for the Amazon Warehouse and Distribution Center in the nearby Township of Bellmawr; Daniel DiSario, a licensed traffic engineer and P.E. of Langan Engineering; and John McDonough, a professional planner. Responsive commentary was presented by the Board's traffic engineer, Joseph Raday; the Board's planner, Brian Slaugh; the Board's engineer, Jim Winckowski; and the Board's solicitor, James Burns. No public comment about the variance application was voiced by anyone in attendance.

At the conclusion of the meeting, the Board voted 8-1 to deny Amazon's application. The Board's corresponding nine-page Resolution (#15-2020) memorializing the denial was published on March 11, 2020.

The Resolution summarized the testimony of Amazon's witnesses and the commentary of the Board's experts. The Resolution also cited to written reports submitted by both Amazon and the Board's experts.

In denying Amazon's application, the Resolution concluded Amazon had not met its burden in establishing both the positive and negative criteria

necessary for granting a use variance under N.J.S.A. 40:55D-70(d). Among other things, the Board found the parking use was not tied to or connected to other buildings or other uses on site; the proposed use solely benefitted Amazon; there was no benefit to the public good with the proposed use; the proposed use was more suitable in an industrial area; and the proposed use was not consistent with the Township's master plan and zoning ordinances.

After the Board hearing but before the publication of the Resolution, the Chancery Division Judge held two case management conferences with counsel for DC, Malachite, Amazon, and the Township.[3] At the second case management conference on February 14, 2020, Amazon's counsel advised the court it did "not wish to appeal" the Board's decision, and was "making arrangements to vacate the [Property]." Counsel for Amazon and the Township then discussed with the court the time frame Amazon would be given to vacate the premises. The Chancery Judge specifically asked counsel for DC and Malachite on the record whether he had "anything [he] wanted to add" to this discussion. DC and Malachite's counsel responded: "On the vacation from the premises? No, Your Honor."

---

[3] DC and Malachite thereafter retained new counsel for Chancery case and the present appeals.

At the end of the February 14 conference, the Chancery Judge orally directed Amazon to vacate the Property within forty-five days. DC and Malachite's counsel did not voice any objection to that directive, and did not request a stay of its implementation. The Chancery Judge consequently issued a written order the same day, mandating that Amazon vacate the premises within forty-five days, i.e., by March 30, 2020.

The March 30 deadline to vacate the premises was shorter than the time frame in which either Amazon or DC and Malachite could bring an action in lieu of prerogative writs in the Superior Court under Rule 4:69-6(b)(3) challenging the Board's variance denial. The Rule specifies that an applicant contesting a determination of a planning board or board of adjustment must commence an action in lieu of prerogative writs no later than forty-five days "from the publication of the notice or the mailing of the notice to the applicant, whichever is later." Rule 4:69-6(b)(3). With the publication of the Resolution occurring on March 11, 2020, the Rule's deadline to bring such a challenge thus fell on April 25, 2020, about twenty-six days after the Chancery Judge's move-out date.

Amazon did, in fact, vacate the Property by March 30, 2020, in compliance with the Chancery Judge's order.

Meanwhile, on March 20, 2020, ten days before the Chancery Judge's deadline to vacate the premises, DC and Malachite filed a verified complaint in lieu of prerogative writs in the Law Division under Docket No. L-0410-20, challenging the Board's denial of Amazon's variance application (the "Law Division case").

Thereafter, on May 1, 2020, DC and Malachite filed a notice of appeal (A-3383-19) in the Chancery case, seeking to vacate the February 14, 2020 move-out order, alleging a violation of their due process rights. In response, the Township filed a civil case information statement with this court, asserting the appeal is moot, because "Amazon [had] stated they would not appeal the Zoning Board's ruling" and also because "Amazon vacated the property approximately two months ago."

While the appeal in the Chancery case was pending, the Law Division case was argued before the vicinage Assignment Judge on September 10, 2020. Counsel for DC and Malachite represented to the court that Amazon had expressed a desire to return to the Property if the Board's denial were reversed. They argued the Board's denial of Amazon's application was arbitrary and capricious. They contended the Board failed to consider sufficiently the underutilized condition of the strip mall--even before the occurrence of the

COVID-19 public health crisis. They also criticized the Board for disregarding the claimed practical benefit that Amazon delivery vehicles would provide for the community and all surrounding strip malls. The Board countered that the variance denial was appropriate under the criteria of the statute, and well supported by the record.

After considering these arguments, the Assignment Judge on September 10, 2020 issued an oral opinion in the Law Division case upholding the Board's denial. A corresponding written order implementing that decision was issued a week later, on September 17, 2020.

In prefacing his analysis, the Assignment Judge observed there were two issues presented before him: "One is whether [DC and Malachite's] suit is moot since Amazon vacated the property after its variance request was denied; and, second, was whether or not the Board acted arbitrary and capriciously or unreasonably in denying the land use variances."

As to the first issue, the Assignment Judge ruled the Law Division case was not moot, since DC and Malachite had represented that Amazon may return to the Property upon a ruling in their favor.

As to the second issue, the judge noted he was obligated to give considerable deference to the Board's decision. The judge found "substantial

evidence in the record for the Zoning Board to draw the conclusion it drew." In particular, such evidence included the presentations of the Board's experts and Amazon's witnesses at the Board hearing, as well as their written reports. The judge also considered the transcript from the Board hearing, noting it reflected "a substantial amount of opportunity to express and challenge perspectives presented in both sides of the dispute."

After an accompanying written order was issued in the Law Division case on September 17, 2020, DC and Malachite appealed that ruling (A-0573-20).

Amazon has not participated in either appeal.

II.

Appellants DC and Malachite essentially make two arguments on appeal. First, in the Chancery case, they assert the judge denied them due process by prematurely ordering Amazon to vacate the premises before the time would elapse under Rule 4:69-6(b)(3) to pursue an appeal of the Board's use variance denial. Second, in the Law Division case, appellants contend that judge misapplied the municipal land use laws, N.J.S.A. 40:55D-1 to -163 (the "MLUL") and applicable case law by upholding the Board's denial of the use variance application.

12

Our scope of review of the judicial rulings in both cases is de novo, because appellants contend each of the trial judges made reversible errors of law. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).  Having undertaken such independent appellate review of the legal issues, we affirm the rulings in both cases.  We discuss each case in turn.

A.

In the Chancery case (A-3383-19), we discern no deprivation of appellants' due process rights resulting from the judge's imposition of a forty-five-day deadline for Amazon to remove its delivery vehicles illegally parked on appellants' lot.  The deadline was specified after counsel for Amazon, which had pursued the use variance, expressly advised the court on the record that it did not wish to appeal the Board's denial of its application, and, in fact, had already begun to vacate the premises.  Moreover, the judge specifically asked the attorney who was then representing DC and Malachite if his clients had anything to add on that subject, and he said no.  Under the circumstances, any alleged error in fixing the deadline date was invited.  See State v. Corsaro, 107 N.J. 339, 345 (1987) (observing that trial court errors that were "induced, encouraged or acquiesced in or consented to" by counsel "ordinarily are not a

basis for reversal on appeal[]") (quoting State v. Harper, 128 N.J. Super. 270, 277 (App. Div. 1974)).

Further, as appellants' present counsel has forthrightly acknowledged, DC and Malachite did not request the Chancery Judge to stay the move-out order pursuant to Rule 2:9-5, pending an action in lieu of prerogative writs appealing the Board's denial. Nor did DC and Malachite seek emergent relief from this court.

There was patently no denial of due process here. See In re Request to Modify Prison Sentences, 242 N.J. 357, 369 (2020) (noting that due process minimally requires "notice and an opportunity to be heard[]"). Appellants, through their counsel, had notice and an ample opportunity to be heard when the Chancery Judge set the deadline with the consent of Amazon and the Township, and voiced no opposition. Appellants also failed to avail themselves of the avenues to pursue an emergent stay. They did not exhaust their potential remedies to postpone the deadline.

The Chancery Judge did not act arbitrarily in establishing a forty-five-day period for Amazon to complete its already-underway efforts to remove its delivery vehicles from the parking lot. The deadline was a reasonable measure to assure an orderly departure. It did not deprive either the owner or the tenant

A-3383-19

of a chance to pursue judicial review of the Board's variance denial in the Law Division pursuant to Rule 4:69-6(b)(3).  In fact, DC and Malachite did so, albeit without prevailing on the merits.

Nothing prevented Amazon from resuming its use of the premises if the variance denial had been reversed.  Indeed, as represented to us by appellate counsel, Amazon is interested in returning to the site if this court overturns the Law Division decision.[4]

For these abundant reasons, we affirm the Chancery Judge's decision in A-3383-19.

## B.

The Law Division appeal (A-573-20) warrants a somewhat longer discussion, but likewise is unavailing.  We begin with a recognition of some well-established principles regarding use variance applications under the MLUL and judicial review of those variance decisions by land use boards.

Generally, judicial review of a decision of a municipal planning board or board of adjustment is highly deferential.  "[T]he law presumes that boards of adjustment and municipal governing bodies will act fairly and with proper

---

[4] In light of that representation, we decline respondents' request that we dismiss these appeals as moot.

motives and for valid reasons … [and] will be set aside only when it is arbitrary, capricious or unreasonable." Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 296 (1965); see also Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (reiterating the judiciary's limited standard of review of zoning board decisions). The challenger has the burden of proving the land use decision is arbitrary and capricious, or unreasonable. See Dunbar Homes, Inc. v. Zoning Bd. of Adjustment of Twp. of Franklin, 233 N.J. 546, 558 (2018).

A reviewing court may not substitute its judgment "for the proper exercise of the Board's discretion." CBS Outdoor v. Borough of Lebanon Plan. Bd., 414 N.J. Super. 563, 578 (App. Div. 2010). Moreover, "deference accorded to a board's denial of a variance is greater than that given to its decision to grant a variance." Ibid. That said, a municipal board's interpretation of the law is reviewed de novo and is not entitled to deference. See Dunbar Homes, 233 N.J. at 559.

The applicable law governing land use variances is codified within the MLUL at N.J.S.A. 40:55D-70(d), commonly referred to as a "subsection d" use variance. In pertinent part, subsection d provides as follows:

> The board of adjustment shall have the power to:
>
> . . . .

d. In particular cases and for special reasons, grant a variance to allow departure from regulations pursuant to article 8 of this act to permit: (1) <u>a use</u> or principal structure <u>in a district restricted against such use</u> or principal structure, (2) an expansion of a nonconforming use, (3) deviation from a specification or standard . . . (4) an increase in the permitted floor area ratio . . . (5) an increase in the permitted density

. . . .

<u>No variance</u> or other relief may be granted under the terms of this section <u>unless such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance</u>.

[N.J.S.A. 40:55D-70(d) (emphasis added).]

The grant of a use variance pursuant to this section requires proof of both "positive and negative criteria." <u>Sica v. Bd. of Adjustment of Twp. of Wall</u>, 127 N.J. 152, 156 (1992).

For instances, as in this case, in which the asserted use is not inherently beneficial to the public good (such as a school or a hospital), the applicant's proof of "positive criteria" requires a showing that special reasons exist to grant the use variance. <u>See</u> <u>Burbridge v. Twp. of Mine Hill</u>, 117 N.J. 376, 386 (1990) (interpreting N.J.S.A. 40:55D-70(d)). These "special reasons" are defined by the general purposes of the zoning laws, as codified in N.J.S.A. 40:55D-2. <u>Ibid.</u>

(quoting Kohl v. Mayor & Council of Fair Lawn, 50 N.J. 268, 279 (1967)). They include, among other things, the promotion of health and safety, and the creation of a desirable visual environment. See Burbridge, 117 N.J. at 386.

The asserted positive criteria must be site-specific, in that the applicant must show that the proposed use is "peculiarly fitted to the particular location for which the variance is sought." Kohl, 50 N.J. at 279 (emphasis added). In the decades since Kohl was decided, that requirement has not changed. See Medici v. BPR Co., 107 N.J. 1, 18 (1987).

Meanwhile, the "negative criteria" requirement of subsection d incorporates two distinct, but related, forms of proof. First, an applicant must show that the non-conforming use of the property will not cause "substantial detriment to the public good." N.J.S.A. 40:55D-70(d). The focus of this criterion is also site-specific, and requires an assessment of the proposed variance's impact on the surrounding properties, and whether it will cause "damage to the character of the neighborhood." Medici, 107 N.J. at 22 n.12.

A second demonstration required under the negative prong of subsection d is a showing that the proposed non-conforming use "will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70(d). The substantial burdens involved in making this

showing were illuminated by the Supreme Court in <u>Medici</u>. Specifically, since <u>Medici</u>, applicants seeking a use variance must offer "an enhanced quality of proof . . . that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance." <u>Medici</u>, 107 N.J. at 21. Such "enhanced proof" must "reconcile the proposed use variance with the zoning ordinance's omission of the use from those permitted in the zoning district." <u>Ibid.</u>

Here, as the Assignment Judge correctly recognized, the Resolution identified ample grounds for the Board to conclude that the positive and negative criteria had not been established to justify the requested use variances. It is undisputed that unenclosed parking of trucks and other delivery vehicles, other than for accessory uses, is prohibited in the BC-2 zone. The parking of Amazon's vehicles on the site, on which it has no buildings or offices, is clearly a non-accessory use. With its special knowledge of local conditions, the Board was justifiably concerned that the arrival, departure, and parking of Amazon trucks and vans in "waves" throughout the day could have a detrimental impact upon the patrons and employees of the retail stores in the shopping center. The Board sensibly took into account the applicant's "delivery truck size, parking

space size and the potential impact on drive aisles and on the existing retail center uses."

The Board fairly weighed the testimony and the other evidence presented, including particularly the traffic data and the existence of alternative, industrially suited sites nearby where such parking is not prohibited. Based upon its careful review as detailed in the Resolution, the Board reasonably concluded the applicant had not satisfied the heavy burden required for a use variance under subsection d and Medici.

We are mindful of appellants' assertion that the retail shopping center is presently underutilized. Paragraph 4 of the Resolution expressly recognized that, according to the Board's engineer, there was currently a 36% vacancy rate in the commercial space on the site.[5] Appellants argue that the ongoing impact of the COVID-19 pandemic since March 2020 has further diminished the general usage of brick-and-mortar retail stores, and has vastly increased online shopping of goods delivered by companies such as Amazon. However, we must confine our review to the record developed below and not speculate about facts that have yet to be adduced, post-pandemic. Nothing in the trial court's decisions, or in

---

[5] Appellants' brief appears to be mistaken in asserting a much higher vacancy rate of 70%. But even if that higher percentage is accurate, we are still persuaded the Board's denial was neither arbitrary nor capricious.

this opinion, precludes a new application to the Board based upon a showing of changed circumstances or a material modification of the earlier proposal.  See Allied Realty, Ltd. v. Borough of Upper Saddle River, 221 N.J. Super. 407, 414 (App. Div. 1987).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION