**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2075-15T4

W.A. HARRIS,

    Petitioner-Respondent,

v.

LOURDES MEDICAL CENTER OF BURLINGTON,

    Respondent-Appellant.

_____

Submitted July 12, 2017 — Decided August 3, 2017

Before Judges Simonelli and Carroll.

On appeal from the Department of Labor and Workforce Development, Division of Workers' Compensation, Case No. 2005-25400.

Marshall Dennehey Warner Coleman & Goggin, attorneys for appellant (Robert J. Fitzgerald, Jammie N. Jackson, and Walter F. Kawalec, III, on the brief).

Taylor & Boguski, LLC, attorneys for respondent (Gary W. Boguski, on the brief).

PER CURIAM

Respondent Lourdes Medical Center of Burlington appeals the December 14, 2015 order of the Division of Workers' Compensation granting petitioner W.A. Harris's motion for medical treatment

benefits. Because the decision by the Judge of Workers' Compensation (JWC) is supported by sufficient credible evidence in the record, we affirm.

Petitioner was employed by respondent as a security guard when, on April 9, 2004, he suffered a work-related injury to his right thumb. Petitioner filed a claim for benefits that culminated in the entry of an October 25, 2007 order approving a settlement for permanency benefits. Consequently, petitioner was awarded five percent of the statutory right hand for orthopedic residuals of a sprain and strain of the thumb with pain and weakness into his right hand.

Petitioner filed his first application for review of the October 25, 2007 award on June 22, 2009. He was thereafter examined by various medical experts retained by both parties. Additionally, on April 6, 2012, petitioner consulted and began treating with Raymond Ragland III, M.D. Dr. Ragland compared X-rays he took that day with earlier X-rays taken in 2005, and noted advanced arthrosis of the right thumb metacarpophalangeal (MP) joint and moderate arthrosis of the right thumb carpometacarpal (CMC) joint. Dr. Ragland administered cortisone injections to both thumb joints and provided petitioner with a thumb splint. However, petitioner continued to experience recurrent discomfort at the right thumb CMC joint. As a result, three weeks later, Dr.

Ragland recommended that petitioner undergo a "right thumb CMC arthrodesis using Acutrak screw."

Respondent's experts disputed petitioner's need for additional medical treatment. Thus, on January 30, 2014, petitioner filed a motion seeking to compel respondent to pay the cost of further treatment for his right hand.

The JWC conducted an evidentiary hearing on the motion over three non-consecutive days from November 10, 2014, through March 16, 2015. At the hearing, petitioner testified that he has experienced increased pain in his right hand since the claim was initially settled in 2007. He described the pain as "very sharp," and stated he now wore a brace on his hand as prescribed by Dr. Ragland. The JWC viewed petitioner's hands, and observed "substantial swelling" in the area of petitioner's right thumb.

Dr. John L. Gaffney, an orthopedist who is board-certified in family medicine, testified on petitioner's behalf. Prior to testifying, Dr. Gaffney reviewed petitioner's medical records, including the reports of the treating physician, Dr. Ragland, and respondent's expert orthopedist, Dr. Elliot L. Ames. Upon examination, Dr. Gaffney found swelling in petitioner's right thumb and no range of motion in his right thumb region. After comparing X-rays of petitioner's right thumb taken in 2004, 2005, and 2012, Dr. Gaffney noted increased, significant arthritis in

the MP and CMC joints in the 2012 X-rays, consistent with Dr. Ragland's findings. In Dr. Gaffney's opinion,

> going back to [2004, petitioner] had a hyperextension . . . strain and sprain of the thumb which led to an inflammatory process and injury to the joint of the thumb . . . which would lead to the early development of arthrosis or arthritis which has accelerated as a result of that injury over the course of the last several years to the point where he is extremely symptomatic and in need of treatment, as Dr. Ragland has stated in terms of an arthrodesis.

Dr. Gaffney testified that he had referred patients to Dr. Ames and Dr. Ragland and that both were well-respected hand specialists. He noted that, while both doctors agreed on a diagnosis, they disagreed as to whether petitioner's present condition was causally related to his 2004 work injury. In this case, Dr. Gaffney, relying on his "observation and research and talking with the patient, [] agree[d] with Dr. Ragland's assessment in terms of causality[,]" and concurred that the surgery Dr. Ragland recommended would increase the functioning in petitioner's right hand.

Respondent's expert, Dr. Ames, is board certified in orthopedic surgery and specializes in hand surgery. Dr. Ames evaluated petitioner in October 2011, and again in May 2014. During the 2011 examination, Dr. Ames noted petitioner had tenderness in his right thumb. During testing to determine range

of motion, Dr. Ames was able to "move [petitioner's] thumb to an additional [sixty-two] degrees and then was able to hold it there." Dr. Ames concluded that petitioner was at maximum medical improvement (MMI), and "[did not] recommend any treatment for the right thumb causally related to the work accident of April 9, 2004."

The May 2014 evaluation did not alter Dr. Ames's opinion. During that examination, petitioner complained of pain in his right thumb, and Dr. Ames again noted tenderness in joints of the thumb. Although Dr. Ames now found petitioner "had very limited range of motion of the end joint of his thumb," he stated that petitioner only exerted "a submaximal effort" during the testing. Dr. Ames described the CMC arthrodesis procedure recommended by Dr. Ragland as "a fusion of a joint . . . you typically will remove the . . . articular cartilage of the joint and then put the two bones together and hold them together with either pins or a screw or a plate[.]" Based on his evaluation, Dr. Ames did not "see any indication for surgery on that joint[,] whether an arthroplasty or arthrodesis." He opined: "I don't think there's enough arthritis in that joint to warrant an arthrodesis[,]" and that performing the procedure would decrease the range of motion in petitioner's thumb.

During further questioning by the court, the following colloquy ensued:

> THE COURT: Doctor, your findings and examination in 2014 indicated the [p]etitioner is at MMI; is that correct?
>
> THE WITNESS: Yes.
>
> THE COURT: You didn't indicate that he doesn't have a problem, you just felt that he did not need any additional treatment; is that correct?
>
> THE WITNESS: Yes.
>
> THE COURT: There is a problem there?
>
> THE WITNESS: He's reporting pain.
>
> THE COURT: So there is an issue and a problem there?
>
> THE WITNESS: Yes.
>
> THE COURT: In fact, on [p]age [six] of your 2014 report not only did you find prominence of the radial condyle, but you indicated that you found tenderness, it was tender at the sesamoid and A1 pulley of the right thumb and there was tenderness in the first dorsal compartment and so forth. So you did find an issue?
>
> THE WITNESS: Yes.
>
> THE COURT: So this disagreement is basically between you and Dr. Gaffney and Dr. Ragland as to whether or not treatment should or should not be rendered?
>
> THE WITNESS: Yes.

After summarizing the procedural history and the testimony and evidence presented, the judge began his findings with petitioner, who he deemed "very credible." The JWC found petitioner's "complaints were compatible and consistent with the injury, and the injury that was subsequently acknowledged and accepted as compensable by [] [r]espondent [is] an injury for which they paid a permanent award."

In his comprehensive oral decision, the JWC rejected Dr. Ames's testimony. The judge found the findings of Dr. Ragland, as adopted by Dr. Gaffney, "are more compatible with the injury and the credible complaints of the [p]etitioner. Although[] Dr. Ragland was not an authorized doctor, the [r]espondent's doctor, he nonetheless was an expert treating doctor. Ordinarily, a treating doctor is given greater weight as compared to an evaluating doctor." The JWC entered a memorializing order providing for the requested treatment, and designated Dr. Ragland as the authorized physician to treat petitioner.

Respondent appeals, raising the following issues for our review:

> Issue I: Standard of Review.
>
> Issue II: The Court Erred in Finding That [] Petitioner Sustained His Burden Of Proving That Any Current Need For Treatment Was Causally Related To The April 9, 2004 Work Accident.

Issue III: The Court Erred in Finding That [] Petitioner Proved That The Treatment Requested Would Be Necessary To Cure And Relieve His Current Condition.

Issue IV: The Court Erred When It Failed To Give Dr. Ames Expert Opinions Greater Weight Than The Opinions Of Petitioner's Expert Dr. Gaffney.

Issue V: The Court Erred When It Relied On The Net Opinion Of Dr. Ragland Who Did Not Testify Before The Court.

Issue VI: The Court Erred In Failing To Uphold The Opinions Of Dr. Ames The Court Ordered Evaluator As To The Need For Treatment And Causal Relationship.

Issue VII[:] The Court Erred In Deeming Dr. Ragland A Treating Physician And Giving His Opinions Greater Weight.

We reject these arguments as unpersuasive.

Our review of workers' compensation cases is limited. <u>Hersh v. Cty. of Morris</u>, 217 <u>N.J.</u> 236, 242-43 (2014). We must determine

> whether the findings made could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole, with due regard to the opportunity of the one who heard the witnesses to judge of their credibility and, in the case of agency review, with due regard also to the agency's expertise where such expertise is a pertinent factor.
>
> [<u>Sager v. O.A. Peterson Constr. Co.</u>, 182 <u>N.J.</u> 156, 164 (2004) (quoting <u>Close v. Kordulak Bros.</u>, 44 <u>N.J.</u> 589, 599 (1965)).]

We may not substitute our own factfinding for that of the judge of compensation. Lombardo v. Revlon, Inc., 328 N.J. Super. 484, 488 (App. Div. 2000). We must defer to the factual findings and legal determinations made by the judge of compensation "unless they are 'manifestly unsupported by or inconsistent with competent relevant and reasonably credible evidence as to offend the interests of justice.'" Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 262 (2003) (quoting Perez v. Monmouth Cable Vision, 278 N.J. Super. 275, 282 (App. Div. 1994), certif. denied, 140 N.J. 277 (1995)). We will "appraise the record as if we were deciding the matter at inception and make our own findings and conclusions" only if the judge of compensation "went so wide of the mark that a mistake must have been made[.]" Manzo v. Amalgamated Indus. Union Local 76B, 241 N.J. Super. 604, 609 (App. Div.), certif. denied, 122 N.J. 372 (1990) (citations omitted). However, we afford no deference to a judge of compensation's interpretation of the law and review legal questions de novo. Renner v. AT&T, 218 N.J. 435, 448 (2014).

Our highly deferential standard of review is of particular significance in this case, where respondent's principal points of error hinge on the JWC's decision to give greater weight to the opinions of Dr. Gaffney and Dr. Ragland than to those of Dr. Ames. Importantly, compensation judges have "expertise with respect to

weighing the testimony of competing medical experts and appraising the validity of [a petitioner's] compensation claim." Ramos v. M & F Fashions, 154 N.J. 583, 598 (1998). In the end, a JWC has the discretion to accept or reject expert testimony, in whole or in part. Kaneh v. Sunshine Biscuits, 321 N.J. Super. 507, 511 (App. Div. 1999).

Here, the JWC saw and heard the testimony of the competing experts, and was in the best position to assess their demeanor and credibility. Sager, supra, 182 N.J. at 164, 166. The JWC gave several valid reasons for crediting Dr. Gaffney's testimony, including the fact that it coincided with Dr. Ragland's findings as petitioner's treating physician. Courts have stressed "the greater opportunity of a treating physician, as compared with a doctor who conducts a single examination in order to become an expert medical witness, to know, understand and decide upon the producing cause of the patient's condition." Mernick v. Div. of Motor Vehicles, 328 N.J. Super. 512, 522 (App. Div. 2000) (quoting Bober v. Indep. Plating Corp., 28 N.J. 160, 167 (1958)).

For the first time on appeal, respondent argues that Dr. Ragland rendered a net opinion, and that the court erred in relying upon it. At the hearing, however, respondent consented to the admission of Dr. Ragland's reports in evidence, and did not object to them as an inadmissible net opinion, or on any other basis. In

conformity with general principles of appellate practice, we decline to address issues that were not presented to the workers' compensation court. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (discussing the limited circumstances in which an appellate court will consider an argument first raised on appeal). Moreover, "[t]rial errors which were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal." State v. Harper, 128 N.J. Super. 270, 277 (App. Div.), certif. denied, 65 N.J. 574 (1974).

Respondent also contends that petitioner failed to prove causation by the preponderance of the credible evidence. Causation need not be proven to a certainty; rather, "all that is required is that the claimed conclusion from the offered facts must be a probable or more probable hypothesis." Kiczula v. Am. Nat. Can Co., 310 N.J. Super. 293, 303 (App. Div. 1998) (citations omitted). Here, the compensation court credited Dr. Gaffney's testimony over that of Dr. Ames, and found that petitioner's evidence established both his injuries and their causation by the April 9, 2004 incident. Because the compensation judge's "findings of fact are supported by substantial credible evidence in the record and are not so wide [of] the mark as to be manifestly mistaken," this court must defer. Tlumac v. High Bridge Stone, 187 N.J. 567, 573 (2006).

Respondent's remaining arguments, to the extent we have not specifically addressed them, lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION