**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4583-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ROBERT LYON,
a/k/a BOB LYON,
ROBERT P. LYON,

    Defendant-Appellant.

_____

Submitted May 11, 2021 – Decided July 13, 2021

Before Judges Moynihan and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 18-09-0580.

Joseph E. Krakora, Public Defender, attorney for appellant (Laura B. Lasota, Assistant Deputy Public Defender, of counsel and on the brief).

Michael H. Robertson, Somerset County Prosecutor, attorney for respondent (Amanda Frankel, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Robert Lyon appeals from a judgment of conviction entered after a jury found him guilty of fourth-degree violation of community supervision for life (CSL), N.J.S.A. 2C:43-6.4(d), arguing:

> POINT I
>
> THE TRIAL COURT'S FAILURE TO GIVE A SPECIFIC UNANIMITY INSTRUCTION AS TO WHICH [CSL] CONDITION DEFENDANT VIOLATED REQUIRES REVERSAL OF DEFENDANT'S CONVICTION.
>
> POINT II
>
> THE TRIAL COURT'S FAILURE TO PROVIDE A N.J.R.E. 404(B) LIMITING INSTRUCTION AS TO THE JURY'S CONSIDERATION OF OTHER BAD ACTS EVIDENCE REQUIRES REVERSAL OF DEFENDANT'S CONVICTION.

Unpersuaded, we affirm.

Defendant's CSL conditions required him to report to his parole officer and submit to drug and alcohol testing as instructed by his parole officer. On February 5, 2018, he refused to submit to an oral drug test ordered by senior parole officer Gina Cusumano during a home visit at defendant's Manville apartment. Consequently, defendant was instructed to report the next day to the parole office in New Brunswick to discuss his noncompliance. Defendant

2                                                                                    A-4583-18

advised Cusumano he would not report because he lacked transportation. He continued to refuse even after Cusumano offered to transport him to and from the parole office which was approximately five miles from defendant's residence. Defendant did not report to the parole office or contact Cusumano on February 6, 2018.

Cusumano attempted four additional visits at defendant's residence on February 22, February 28, March 8 and March 14, 2018. Each time, defendant did not answer his door. Cusumano testified on each occasion she left a form notice—containing the date of the attempted visit, defendant's new reporting date (the day following each visit) and time at the district parole office, and a warning that his failure to report would constitute a CSL violation—"in the crease" of the front door of defendant's residence which was protected by a storm door. Defendant never reported to the parole office as instructed in each of the four notices. He was charged with violating CSL and was arrested on a warrant.

The one-count indictment against defendant alleged he violated CSL "by failing to report to his parole officer and/or failing to submit to drug and alcohol testing." Defendant argues his right to due process and a fair trial were violated because the trial court did not parse the bases for the violation when it instructed the jury. He contends the court should have given a specific unanimity

A-4583-18

instruction requiring the jury to render a separate verdict on each of the allegations: failure to report and failure to submit to substance testing; and structured the verdict sheet separating those two allegations instead of asking the jury to render a decision on the single question that read in part: "The Indictment charges that defendant ROBERT LYON, between February 5, 2018 and April 26, 2018, in Manville, knowingly violated the terms and conditions of community supervision for life by failing to report to his parole officer and/or failing to submit to drug and alcohol testing without good cause."

We review defendant's claim for plain error, R. 2:10-2, because he did not object to the jury charge or the verdict sheet. Reversal is required "only if the [alleged] error was 'clearly capable of producing an unjust result,'" State v. McGuire, 419 N.J. Super. 88, 106 (App. Div. 2011) (quoting R. 2:10-2), where the defendant presents evidence "sufficient to raise 'a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached,'" State v. Funderburg, 225 N.J. 66, 79 (2016) (alteration in original) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)). "The mere possibility of an unjust result is not enough" to constitute plain error. Ibid. Rather, the defendant must establish that the error "was clear and obvious and that it affected [his] substantial rights." McGuire, 419 N.J. Super. at 107.

A-4583-18

Plain error in the context of jury charges is "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Camacho, 218 N.J. 533, 554 (2014) (alteration in original) (quoting State v. Adams, 194 N.J. 186, 207 (2008)). We "must not look at portions of the charge alleged to be erroneous in isolation." State v. McKinney, 223 N.J. 475, 494 (2015). Instead, "[t]he charge must be read as a whole in determining whether there was any error." State v. Torres, 183 N.J. 554, 564 (2005); see also State v. Jordan, 147 N.J. 409, 422 (1997). In addition, "[t]he error must be considered in light of the entire charge and must be evaluated in light 'of the overall strength of the State's case.'" State v. Walker, 203 N.J. 73, 90 (2010) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)). Defendant's failure to object to the instruction "is considered a waiver to object to the instruction on appeal." State v. Maloney, 216 N.J. 91, 104 (2013) (first citing R. 1:7-2; and then citing Torres, 183 N.J. at 564).

Our review is further focused because, although specific unanimity instructions—mandating unanimous agreement by the jurors "on the facts underlying the guilty verdict"—should be provided "when there is a specific

A-4583-18

request for those instructions and where there exists a danger of a fragmented verdict, the failure to provide a specific unanimity instruction in the absence of such a request will not necessarily constitute reversible error." State v. Gandhi, 201 N.J. 161, 192-93 (2010) (citation omitted). "The core question is, in light of the allegations made and the statute charged, whether the instructions as a whole [posed] a genuine risk that the jury [would be] confused." State v. Parker, 124 N.J. 628, 638 (1991) (alterations in original) (citation and internal quotation marks omitted). Our analysis requires us to determine "whether the acts alleged are conceptually similar or are 'contradictory or only marginally related to each other,' and whether there is a 'tangible indication of jury confusion.'" Gandhi, 201 N.J. at 193 (quoting Parker, 124 N.J. at 639).

We discern no plain error in the trial court's jury charge. Taken as a whole, the instructions did not have the "clear capacity to bring about an unjust result." Camacho, 218 N.J. at 554 (citation omitted).

First, although defendant failed to submit to drug and alcohol testing only once, during the February 5, 2018 visit, and failed to report the day after and on the other days he was noticed to report, all were CSL violations that were proved chiefly by the testimony of one witness: Cusumano. The acts were not just "marginally related to each other." Gandhi, 201 N.J. at 193 (quoting Parker, 124

6

N.J. at 639). Cusumano made clear to defendant what he was required to do. The trial evidence established defendant had refused to comply.

Not only was there no "tangible indication of jury confusion," Gandhi, 201 N.J. at 193 (quoting Parker, 124 N.J. at 639), the charge as a whole and the trial court's response to a question posed by the jury during deliberations dispel defendant's argument that there was a possibility he was convicted by less than a unanimous verdict. We note the trial court instructed the jury that its verdict had to be unanimous. As to the crime itself, although both allegations were presented to the jury as they were indicted, the trial court instructed:

> The second element[1] that the State must prove beyond a reasonable doubt is that the [d]efendant knowingly violated a condition imposed upon him as a result of the special sentence, as imposed by law.
>
> . . . .
>
> Conditions imposed on a [d]efendant by the special sentence of [CSL] include one, a requirement that the [d]efendant report to the assigned parole officer as instructed; two, the requirement that the [d]efendant submit to drug and alcohol testing at any time as directed by the assigned parole officer.

---

1 The first and third elements of the offense are not germane to the issues on appeal.

Notwithstanding the assistant prosecutor's comment to the jury during summation that "some of you can find that . . . [d]efendant failed to report to his parole officer, and some of you can find that he failed to take the drug test[;] [y]ou don't all have to agree that he violated one particular condition, as long as you all agree that at least one condition was violated[,]" the jury was told that the State had to prove defendant knowingly violated "a" condition; and both alleged failures were separately listed by the court. The jury was told to disregard any of counsels' comments on the law if they conflicted with the court's charge. The jury is presumed to have followed that instruction. State v. Smith, 212 N.J. 365, 409 (2012).

The second question posed by the jury during deliberations, as read into the record by the trial court, asked: "[T]he verdict sheet states [']and/or.['] Do we need to find guilty or not guilty on both conditions or can it be only one condition?" Both counsel voiced prior approval of the court's answer: "And the answer is yes, it can only be one condition."

The jury never exhibited any confusion. To the contrary, its question manifested that it was separately considering each act, and the trial court confirmed the jury could base its guilty verdict on a violation of just one condition, not both. The jury is also presumed to have followed that instruction.

A-4583-18

<u>Ibid.</u> About five minutes later, the jury reported it had reached its verdict. The instructions as a whole did not pose "a genuine risk that the jury [would be] confused." <u>Parker</u>, 124 N.J. at 638 (alteration in original) (citation and internal quotation marks omitted).

We also recognize the State's overwhelming proofs negated any chance that the jury verdict was unjust. Not only did Cusumano directly tell defendant to report on February 6—offering to drive defendant to the office—and later leave the written notice forms in defendant's door, which were never there when she returned on February 28, March 8 and March 14, 2018, she left phone messages for defendant to contact her, drove around defendant's neighborhood looking for defendant, enlisted a Manville detective to look for defendant and noticed during her last visit a FedEx package had been delivered to defendant at his residence indicating he was still living there.

There is no factual or legal basis to conclude that the absence of a unanimity charge under these circumstances was "clearly capable of producing an unjust result." <u>R.</u> 2:10-2.

Defendant also claims he was denied his due-process and fair-trial rights because the trial court did not provide a limiting instruction per N.J.R.E. 404(b)

A-4583-18

after his counsel elicited testimony from Cusumano about his prior failures to comply with CSL conditions.

Defendant, however, never moved the court to admit the evidence under N.J.R.E. 404(b) and never requested a limiting instruction. As said, defendant did not object to the trial court's final charge. "The absence of an objection suggests that trial counsel perceived no error or prejudice, and, in any event, prevented the trial [court] from remedying any possible confusion in a timely fashion." Bradford v. Kupper Assocs., 283 N.J. Super. 556, 573-74 (App. Div. 1995); see also State v. Gaikwad, 349 N.J. Super. 62, 75 (App. Div. 2002).

Again, we will typically reverse under such circumstances "only if the [alleged] error was 'clearly capable of producing an unjust result,'" McGuire, 419 N.J. Super. at 106 (quoting R. 2:10-2), where the defendant presents evidence "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached," id. at 106-07 (quoting State v. Taffaro, 195 N.J. 442, 454 (2008)). In other words, he must establish that the error "was clear and obvious and that it affected [his] substantial rights." Id. at 107.

When our Supreme Court reviewed the history and purpose of N.J.R.E. 404(b)'s predecessor, it recognized the two faces of bad-act evidence proffered

under the rule: "simultaneously . . . highly probative and extremely prejudicial. . . . Despite its probative worth, other-crime evidence offered solely to prove criminal disposition is excluded under the [r]ule, as at common law: The motivating policies are said to be to avoid confusion, unfair surprise and prejudice." State v. Stevens, 115 N.J. 289, 300 (1989) (citations and internal quotation marks omitted).

Those tenets were not violated when defense counsel questioned Cusumano about defendant's prior experience on CSL. Obviously, counsel did not attempt to demonstrate defendant's proclivity to violate CSL's conditions. Under cross-examination, Cusumano admitted defendant had never tested positive for controlled dangerous substances. When asked if he ever tested positive for consuming alcohol, the following colloquy ensued:

> [CUSUMANO]: He didn't test positive, but, and this is way back, an officer had observed him at a bar.
>
> [DEFENSE COUNSEL]: Okay.
>
> [CUSUMANO]: And told him that he shouldn't be there and that he should leave.
>
> [DEFENSE COUNSEL]: Okay. The officer, if you know, who made this observation, did you learn that while [defendant] had been in the bar, was also consuming an alcoholic drink?

A-4583-18

[CUSUMANO]: I don't, I don't—it's my recollection that they never confirmed what it was, in fact, that he was drinking. The condition, the way it reads that you're not to frequent an establishment whose primary purpose is the sale of alcohol. And he was at a restaurant, but sitting at the bar.

[DEFENSE COUNSEL]: Okay.

[CUSUMANO]: So the officer felt that it was inappropriate. But again, he wasn't violated for it, it was more like an admonishment.

[DEFENSE COUNSEL]: So basically get off that bar stool and go into the restaurant?

[CUSUMANO]: He, yeah, right.

It would have been more prudent if that hearsay—even about an incident in which Cusumano admitted there was no proof defendant was drinking—and some other testimony about defendant's violations that followed, had been excluded. But it set the tone for defense counsel's further questioning about defendant's violations that were never criminally charged. Further cross-examination adduced defendant's failures to report and attend a counseling program. Like the incident in the bar, however, cross-examination also revealed mitigating evidence. Cusumano testified there was no direct public transportation between defendant's residence and the parole office in another

county, transportation was difficult and there were times defendant "failed to report due to transportation issues."

Defense counsel utilized that testimony during his summation arguing in the "twelve-plus years" defendant had been subject to CSL, "[h]e never tested positive for drugs or alcohol" and "[t]he worst . . . Cusumano could say was that he was observed sitting at a bar, in a bar[-]restaurant"; Cusumano could not say defendant was drinking alcohol; and "he was instructed to leave the bar and . . . go to the restaurant section, and he did." Counsel also highlighted the circuitous, "complicated" and costly public transportation route defendant had to take to travel to the parole office. Counsel pointed to Cusumano's long history of supervising defendant, dating back to 2006, and blamed Cusumano—who had never before filed a criminal complaint against defendant—of "demanding things of [defendant] that he couldn't do" despite knowing his "track record." And, in a case where the State's proofs of defendant's non-compliance were so clear, counsel followed a strategy of attacking the bias of the person who was proffering the bulk of that evidence, Cusumano: "I think it also came through that she didn't like the guy. And I think that that can play a role in her violating him."

A-4583-18

Objections to other-wrongs or bad-acts evidence generally do not warrant reversal if that evidence was elicited consciously by the objecting party on cross-examination. See State v. Brown, 138 N.J. 481, 531-32 (1994), overruled on other grounds by State v. Cooper, 151 N.J. 326 (1997). "Trial errors . . . induced, encouraged or acquiesced in or consented to by defense counsel" will not ordinarily be grounds for reversal as plain error. State v. Harper, 128 N.J. Super. 270, 277 (App. Div. 1974). Counsel may not "condemn the very procedure he sought and urged, claiming it to be error and prejudicial." Ibid. (citations omitted).

> Thus, where the invited error did not demonstrably impair a defendant's ability to maintain a defense on the merits or where the after-criticized judicial action was reasonably thought to secure a trial or tactical advantage for the defendant, it has not been considered so egregious as to mandate a reversal on appeal.
>
> [Ibid. (citations omitted).]

"The invited-error doctrine is intended to 'prevent defendants from manipulating the system' and will apply 'when a defendant in some way has led the court into error' while pursuing a tactical advantage that does not work as planned." State v. Williams, 219 N.J. 89, 100 (2014) (quoting State v. A.R., 213 N.J. 542, 561-62 (2013)).

14

The evidence defendant complains of was neither introduced by the State nor sanctioned by the trial court. Perhaps the court should have intervened to strike the hearsay testimony, but defense counsel was pursuing a strategy to counter the State's substantial evidence that defendant failed to comply on numerous occasions with the CSL conditions. Moreover, defendant never requested a limiting instruction or informed the court he sought to use Cusumano's testimony for a limited purpose; nor did he specify that purpose.

The doctrine of invited error bars any claim of prejudice. Defendant has not demonstrated "that the error was so egregious as to cut mortally into his substantive rights" so as to require reversal. State v. Ramseur, 106 N.J. 123, 282 (1987) (citation and internal quotation marks omitted). We see no plain error, particularly because of the overwhelming evidence of guilt. See State v. Prall, 231 N.J. 567, 571-72 (2018) (holding defendant's convictions would be affirmed despite absence of limiting instruction, use of bad-act evidence during summations and admission of hearsay because errors "were not capable of producing an unjust result because of the overwhelming weight and quality of the evidence against defendant"). As such, we see no reason to disturb the jury's verdict. See State v. Marshall, 123 N.J. 1, 93 (1991) ("[E]xcept in the most

15

extreme cases, strategic decisions made by defense counsel will not present grounds for reversal on appeal[.]").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4583-18